**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JENS PORUP<br>MuckRock<br>Dept MR 31600<br>411A Highland Avenue<br>Somerville, MA 02144 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. 17-72 |
| CENTRAL INTELLIGENCE AGENCY<br>Washington, D.C. 20505 | * | |
| Defendant. | * | |

* * * * * * * * * * * *

**COMPLAINT**

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, et seq., as amended, for the disclosure of agency records held by the defendant Central Intelligence Agency, as well as an order declaring the pattern or practice of the defendant Central Intelligence Agency to be unlawful.

**JURISDICTION**

1. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the defendant pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

**VENUE**

2. Venue is appropriate under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391.

**PARTIES**

3. Plaintiff Jens Porup ("Mr. Porup") is an American citizen and freelance national security and cybersecurity reporter.

4. Defendant Central Intelligence Agency ("CIA") is an agency within the meaning of 5 U.S.C. § 552 (e), and is in possession and/or control of the records requested by Mr. Porup that are the subject of this action.

## FACTUAL INFORMATION

5. Since its formal creation with the signing of the National Security Act of 1947, the CIA has always been technically prohibited by law from engaging in various activities. Specifically, the CIA has been forbidden from having "police, subpoena, law enforcement powers or internal security functions" within the United States. History has shown us, however, that simply because the law has told the CIA it cannot do something does not mean it has not done it anyway.

*Church Committee*

6. The United States Senate Select Committee to Study Governmental Operations with Respect to Intelligence Activities (more commonly known as the "Church Committee") conducted arguably the most extensive investigation into allegedly illegal actions by various U.S. Government agencies, including the CIA.

7. Among the various activities conducted by the CIA, in defiance of their statutory charter and the Constitution, were the following: (a) domestic intelligence operations against American citizens, including files maintained on at least 10,000 Americans (and some Members of Congress); (b) surreptitious inspection of mail; and (c) burglaries. *https://s3.amazonaws.com/s3.documentcloud.org/documents/238963/huge-c-i-a-operation-reported-in-u-s-against.pdf* (last accessed January 4, 2017).

8. In its published reports, the Church Committee investigated allegations of U.S. involvement in the assassinations of various foreign leaders, including Patrice Lumumba of the Democratic Republic of the Congo, Rafael Trujillo of the Dominican Republic, General Rene Schneider of Chile, and Fidel Castro of Cuba. The Church Committee concluded that the plots against Patrice Lumumba and Fidel Castro were conceived by the U.S. Government. Although the Church Committee did not find definitive evidence tying the CIA (or the U.S. Government as a whole) to the two other assassination attempts, it did state that the "system of executive command and control was so ambiguous that it is difficult to be certain at what levels assassination activity was known and authorized." *http://www.aarclibrary.org/publib/church/reports/ir/html/ChurchIR_0010b.htm* (last accessed January 4, 2017).

9. In the aftermath of the Church Committee, then-President Gerald Ford issued Executive Order 11905, prohibiting the U.S. Government from sanctioning assassinations of foreign leaders. President Ronald Reagan reaffirmed the ban when he issued Executive Order 12333, which replaced Executive Order 11905.

*Post-9/11 Activities*

10. Several decades after the Church Committee's investigations, and in the wake of the terrorist attacks of September 11, 2001, the CIA's Detention and Interrogation Program drew the agency once again across the proverbial lines of legality. The Committee Study of the Central Intelligence Agency's Detention and Interrogation Program (commonly known as the "Torture Report") was a bipartisan, 6,000-page report issued by the Senate Select Committee on Intelligence.

11. The Torture Report detailed actions by CIA officials between 2001 and 2006, and in the context of the Global War on Terror. Among its various findings, the Torture Report determined that CIA officials had engaged in the use of "enhanced interrogation techniques" of detainees, and that the CIA had misled the Department of Justice and the public regarding the effectiveness of the program or the brutal nature of the interrogations. The Torture Report found that some of the uses of enhanced interrogation techniques were not even properly authorized. *https://web.archive.org/web/20141209165504/http://www. intelligence.senate.gov/study2014/sscistudy1.pdf* (last accessed January 4, 2017). The techniques themselves have been separately compared to torture, which is illegal under U.S. and international law.

*Current Dispute*

12. The present lawsuit is the result of the CIA's ridiculous refusal to comply with its statutory obligations under FOIA. Notwithstanding the documented evidence that, prior to the issuance of Executive Order 11905, the CIA had not been prohibited from (and in fact had conceived of plans for) engaging in assassinations of foreign leaders, the Agency – as detailed below in paragraphs 15, 16 and 18 – is refusing to even process a FOIA request for records regarding a particular method of assassination possibly employed by the CIA in the past. Instead, the CIA is effectively taking the position that it can refuse to comply with FOIA by simply stating, in effect, "trust us, we do not do that". This Court should not permit the CIA to so blithely disregard FOIA.

13. Mr. Porup has additional pending FOIA requests seeking, among other things, records memorializing data on the number of occasions each year in which CIA officials engage in rape in the course of their official duties. It is reasonably likely that these

requests will be impacted by the CIA's pattern or practice of refusing to process requests regarding conduct in which it claims it does not and cannot engage.

**FIRST CAUSE OF ACTION**

14. On May 1, 2015, Mr. Porup submitted a FOIA request to CIA. The request sought "any all documents relating to CIA use of poison for covert assassination".

15. By letter dated May 21, 2015, CIA issued a final response. The letter simply stated: "Please refer to Executive Order 12333 which describes the conduct of intelligence activities, citation 2.11, which pertains to the prohibition on assassination." The letter did not contain any instructions on appealing the final response.

16. Mr. Porup submitted an administrative appeal in response to the CIA's May 21, 2015, letter. By letter dated September 17, 2015, the CIA responded to the appeal and stated the following: "We did not extend you administrative appeal rights as part of our initial-level processing and are declining to process an appeal for you."

17. On November 19, 2015, Mr. Porup resubmitted his FOIA request to CIA. Mr. Porup realleges paragraph 15 in part, as his November 19, 2015, submission used language identical to that which was already described in paragraph 15.

18. By letter dated December 14, 2015, the CIA issued a final response, which consisted merely of copies of the final responses previously issued by CIA and referenced in paragraphs 15 and 16. The CIA designated the new request as F-2016-00484. The CIA letter did not contain instructions regarding administrative appeal options.

19. Between December 19, 2015, and November 6, 2016, Mr. Porup submitted twelve (12) separate requests for status updates regarding FOIA Request No. F-2016-00484. No response was ever received from CIA with respect to any of those requests for status

updates.

20. As far more than twenty working days have elapsed without a substantive response from CIA, Mr. Porup has constructively exhausted all required administrative remedies.

21. Mr. Porup has a legal right under FOIA to obtain the information he seeks, and there is no legal basis for the denial by CIA of said right.

## SECOND CAUSE OF ACTION

22. Mr. Porup realleges paragraphs 13-19.

23. Upon information and belief, the CIA maintains a pattern or practice of categorically refusing to process FOIA requests that seek information regarding conduct in which the CIA states it does not and cannot engage.

24. A policy, practice, or standard operating procedure of uniformly refusing to even process a properly described FOIA request (to say nothing of refusing to process an administrative appeal) is in violation of FOIA and deprives requesters of their statutory rights. Such a practice constitutes outrageous conduct for purposes of the broad equitable powers provided by FOIA to the Court. Such a policy is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.

25. Mr. Porup stands to continue to be harmed by this ongoing policy in the future, namely by way of a reasonably likely refusal by CIA to process separate, pending FOIA requests seeking information regarding conduct which the CIA is likely to claim it does not and cannot engage.

26. The Requesters are therefore entitled to relief in the form of a declaratory order that CIA is in violation of its statutory responsibilities under FOIA and an injunction compelling CIA to discontinue this pattern or practice and to properly process such FOIA requests in the future.

WHEREFORE, plaintiff Jens Porup prays that this Court:

(1) Orders the defendant to disclose the requested records in their entirety and make electronic copies promptly available to the plaintiffs;

(2) Declare as unlawful the defendant's current policy, practice or standard operating procedure of refusing to process FOIA requests for information concerning conduct regarding which the defendant claims it does not and cannot engage;

(3) Award reasonable costs and attorney's fees as provided in 5 U.S.C. § 552 (a)(4)(E) and/or 28 U.S.C. § 2412 (d);

(4) Expedite this action in every way pursuant to 28 U.S.C. § 1657 (a); and

(5) Grant such other relief as the Court may deem just and proper.

Date: January 12, 2017

Respectfully submitted,

/s/
_______________________________

Bradley P. Moss, Esq.
D.C. Bar #975905
Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Brad@MarkZaid.com
Mark@MarkZaid.com

Attorneys for Plaintiff