IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JENS PORUP,

        Plaintiff,

v.

CENTRAL INTELLIGENCE AGENCY,

        Defendant.

Case No. 1:17-cv-72

### DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant Central Intelligence Committee ("CIA") has now completed its supplemental searches of the agency's operational files in response to Plaintiff's FOIA request. The CIA located no responsive documents. In accordance with the Court's Order of August 14, 2019, this supplemental brief is provided to explain how the CIA's supplemental searches were reasonably calculated to locate responsive operational files, and why judgment should be entered for Defendant on this ground.

**I.  Background**

The CIA previously explained in its motion for summary judgment how it conducted a reasonable search for documents responsive to Plaintiffs' request. Def's Mot. at 15-19, ECF No. 23-1. In his opposition, Plaintiff challenged the agency's search, among other reasons, on the ground that the search did not include CIA operational files. Pl's Opp'n at 14, ECF No. 27. Importantly, these files are subject to a separate statutory scheme that governs whether they may be subject to search under FOIA.

The CIA Information Act, 50 U.S.C. § 3141, generally exempts CIA operational files from the search, review, publication, and disclosure requirements of the FOIA. *See* 50 U.S.C.

§ 3141(a).  The Act defines "operational files," *inter alia*, as "files of the National Clandestine Service which document the conduct of foreign intelligence or counterintelligence operations or intelligence or security liaison arrangements or information exchanges with foreign governments or their intelligence or security services."  50 U.S.C. § 3141(b).  In short, "[o]perational files . . . are the most sensitive of the CIA's records and, thus, the most likely to need an extra measure of protection."  *Sullivan v. C.I.A.*, 992 F.2d 1249, 1251 (1st Cir. 1993).

The Act provides exceptions for certain operational files, however, and thus makes them eligible for disclosure under FOIA.  These exceptions include when "a requester seeks information concerning 'the specific subject matter of an investigation by the congressional intelligence committees . . . for any impropriety, or violation of law, Executive order, or Presidential directive, in the conduct of an intelligence activity."  50 U.S.C. § 3141(c)(3).  In his opposition brief, Plaintiff argued that the CIA was required to search its operational files here because the subject matter of his FOIA request – the use of poison in assassinations – "was the subject of a congressional investigation[.]"  Pl's Opp'n at 14.

The CIA agreed that the subject matter of Plaintiff's FOIA request was indeed at issue in an applicable congressional investigation.  *See* Supplemental Declaration of Antoinette B. Shiner ("Supp. Shiner Decl.") ¶ 4, attached as Exhibit A.  Specifically, the Senate Select Committee to Study Governmental Operations with Respect to Intelligence Activities (hereinafter, "Church Committee"), was formed in 1975 and investigated, among other things, alleged attempts to assassinate certain foreign leaders.  *See, e.g.,* Committee on Alleged Assassination Plots Involving Foreign Leaders: An Interim Report of the Select Committee to Study Governmental Operations with respect to Intelligence Activities, United States Senate, S. Rep. No. 94-465

2

(1975). Moreover, the Church Committee has been held to qualify as a "congressional intelligence committee," as required by 50 U.S.C. § 431(c)(3) to permit disclosure of certain operational files. *See Morley v. C.I.A.*, 508 F.3d 1108, 1116 (D.C. Cir. 2007).

The CIA thus concluded that any responsive operational files which were the "specific subject matter," 50 U.S.C. § 431(c), of the Church Committee, would not be exempted from disclosure under FOIA by the CIA Information Act. To determine if any such responsive, non-exempt operational files existed, the CIA conducted supplemental searches as detailed below.

## II.     The CIA Conducted Adequate Searches of its Operational Files

The CIA previously explained that, under FOIA, an agency's search for responsive records "need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986). Consequently, an agency's failure to locate a responsive document does not render the search inadequate, as the question for the court is "not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984); *see also Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search.").

As relevant here, the CIA Information Act permits the processing of records under FOIA where a specific congressional intelligence committee "would have deemed the records at issue to be central to its inquiry." *See Morley*, 508 F.3d at 1118; *see also Talbot v. Dep't of State*, 315 F. Supp. 3d 355, 369 (D.D.C. 2018) (same). Accordingly, the CIA searched its operational files

for those responsive records would have been deemed central to the inquiry of the 1975 Church Committee.

As set forth in the supplemental declaration of Antoinette B. Shiner, agency FOIA personnel consulted with relevant subject matter experts and concluded that their supplemental searches should include those operational files from the Directorate of Operations created on or before December 31, 1980, five years after the Church Committee issued its interim report on alleged assassination plots, *see* S. Rep. No. 94-465 (1975), and four years after the committee's final report. *See* Select Committee to Study Governmental Operations with Respect to Intelligence Activities, Foreign and Military Intelligence, S. Rep. No. 94-755 (1976); Supp. Shiner Decl. ¶ 4. By including those documents created before, during and for several years after the issuance of the Committee's final report, the CIA reasonably ensured that any responsive operational file which was central to the Church Committee's investigation would be included in its searches. Supp. Shiner Decl. ¶ 4; *see also Davy v. C.I.A.*, 357 F. Supp. 2d 76, 83 (D.D.C. 2004) ("[T]he information requested must have been the specific subject of an investigation.").

With respect to the specific files searched, operational records of the CIA Directorate of Operations are categorized as either current records, which are stored electronically, or archival records, stored in hard copy. Supp. Shiner Decl. ¶¶ 6-7. The agency searched both types of records in its supplemental searches here. *Id*. First, the current operational files, i.e. those electronically stored, created on or before December 31, 1980, were searched using certain electronic search terms. FOIA personnel determined that the following search terms were those reasonably likely to return responsive documents: "poison," "covert," "assassination," "Church

Committee," "Rockefeller Commission," "family jewels," "ZR/RIFLE," "AMLASH," "ZR/RIFLE," "Patrice Lumumba," and "Mongoose."  Supp. Shiner Decl. ¶ 5.

Agency personnel determined that searches of current operational files using each individual term were likely to return large numbers of "false hits," or documents which contained the applicable search term but were non-responsive.  *Id.* ¶ 6.  Accordingly, the search terms were instead applied in compound form to create logical search queries.  *Id.*  That is, FOIA personnel conducted searches using multiple terms, including with so-called Boolean connectors, such as "and."  *Id.*; *cf. Bagwell v. U.S. Dep't of Justice*, 311 F. Supp. 3d 223, 230 n.3 (D.D.C. 2018) (suggesting in FOIA action that DOJ "might consider using Boolean search terms to limit the number of unresponsive documents returned").  CIA FOIA personnel concluded that such "compound searches would be more efficient, prevent the searches from returning large numbers of non-responsive documents, and constituted the best method to determine whether any responsive operational files existed."  Supp. Shiner Decl. ¶ 6; *see also Gov't Accountability Project v. U.S. Dep't of Homeland Sec.*, 335 F. Supp. 3d 7, 13 n.3 (D.D.C. 2018) (noting that where an agency is concerned that searches may return a large volume of documents, "that concern dictates using more sophisticated search techniques, including additional filtering keywords or Boolean operators and connectors, to winnow the results to a manageable level").  These compound searches located multiple potentially responsive documents, which contained the required search terms.[1]  Supp. Shiner Decl. ¶ 6.  However, CIA FOIA personnel reviewed

---

[1] The agency is not required to set forth the precise formulation of compound terms and/or Boolean connectors in each and every search to demonstrate a reasonable search under FOIA. *Citizens For Responsibility & Ethics in Washington v. Nat'l Indian Gaming Comm'n*, 467 F. Supp. 2d 40, 50 (D.D.C. 2006) ("FOIA does not demand this degree of detail."); *see also Bigwood v. DoD*, 132 F. Supp. 3d 124, 142 (D.D.C. 2015) (rejecting argument that agency was

these documents line-by-line and determined that none of these documents were in fact responsive to Plaintiffs' request. *Id*.

In addition to its searches of current operational records, the agency conducted separate searches of archival operational records. These records are stored only in paper form at the Agency Archives and Records Center ("AARC"). *Id*. ¶ 7. However, the AARC utilizes an electronic inventory of the subject matter of the archival records. *Id*. The electronic inventory enables agency personnel to search for key words and phrases relating to the subject matter of the documents. *Id*. The agency ran searches using each of the terms set forth above separately, and no Boolean terms and connectors were required. These searches did not uncover any potentially responsive materials. *Id.*

At the conclusion of the agency's search of archival records, the CIA determined that it had searched all files reasonably likely to contain responsive operational records, *id.* ¶ 8; *see Chambers v. Dep't of Interior*, 568 F.3d 998, 1003 (D.C. Cir. 2009), that were the subject of the Church Committee's investigation, and found nothing responsive  Accordingly, the agency performed a reasonable supplemental search under the FOIA, and judgment should be entered for Defendant on this ground.

Dated: September 20, 2019                    Respectfully submitted,

                                              JOSEPH H. HUNT
                                              Assistant Attorney General

                                              ELIZABETH J. SHAPIRO
                                              Deputy Branch Director

---

required to provide specific "connectors or Boolean operators" employed in search, and upheld declaration that provided "the basic information required—what records were searched, by whom, and in what manner").

*/s/ Michael Drezner*
Michael Drezner
Trial Attorney (Virginia Bar No. 83836)
United States Department of Justice
Civil Division, Federal Programs Branch
Tel.:   (202) 514-4505
Fax:    (202) 616-8470
Email: Michael.L.Drezner@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2019, a copy of the foregoing was filed electronically via the Court's ECF system which sent notification of such filing to counsel of record.

>                                 */s/ Michael Drezner*
>                                 Michael Drezner
>                                 Trial Attorney (Virginia Bar No. 83836)
>                                 United States Department of Justice
>                                 Civil Division, Federal Programs Branch
>                                 Tel.:   (202) 514-4505
>                                 Fax:   (202) 616-8470
>                                 Email: Michael.L.Drezner@usdoj.gov